**ARNOLD & PORTER KAYE SCHOLER LLP**
E. ALEX BEROUKHIM (Bar No. 220722)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199
alex.beroukhim@arnoldporter.com

Lori B. Leskin*
E. Dean Harris Porter*
250 West 55th Street
New York, New York 10019
Telephone: 212.836.8000
lori.leskin@arnoldporter.com
dean.porter@arnoldporter.com

* *pro hac vice* application forthcoming.

*Attorneys for Defendants*
COSTCO WHOLESALE CORP. and
NICE-PAK PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARISA BULLARD and MILA CORRIGAN, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>COSTCO WHOLESALE CORP. and NICE-PAK PRODUCTS, INC.,<br><br>                Defendant. | Case No.   3:24-cv-03714-RS<br><br>The Honorable Richard Seeborg<br><br>**DEFENDANTS COSTCO WHOLESALE CORP. AND NICE-PAK PRODUCTS, INC.'s MOTION TO DISMISS CLASS ACTION COMPLAINT WITH MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        October 3, 2024<br>Time:        1:30 p.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND ALL PARTIES OF RECORD**:

PLEASE TAKE NOTICE that Defendants Costco Wholesale Corp. and Nice-Pak Products, Inc. (together, "Defendants") hereby move to dismiss the Class Action Complaint filed by plaintiff Larisa Bullard ("Plaintiff") for (i) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); (ii) failure to state a claim under Fed. R. Civ. P. 12(b)(6); and (iii) failure to plead an allegedly fraudulent scheme with particularity, requiring dismissal under Rule 9(b).

Defendants' Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the concurrently submitted Request for Judicial Notice and Declaration of E. Alex Beroukhim and exhibits attached thereto, any additional briefing on this subject, including their reply brief, and the evidence and arguments to be presented to the Court at the hearing on this matter.

Dated:  August 9, 2024

Respectfully Submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:  /s/ E. Alex Beroukhim
E. Alex Beroukhim
*Attorneys for Defendants*
COSTCO WHOLESALE CORP and
NICE-PAK PRODUCTS, INC.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND.....................................................................................2

   I.  The PFAS Group and their Regulation.........................................................2

   II.  The Allegations in Plaintiff's Complaint. ...................................................3

ARGUMENT ..........................................................................................................5

   I. LEGAL STANDARD .................................................................................5

   II.  PLAINTIFF CANNOT ESTABLISH ARTICLE III STANDING, AND HER COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1). ....................................................................................................6

      a.  Plaintiff Does Not Plausibly Allege that "Toxic" PFAS at "Dangerous" Levels was Present in Any Unit of the Product. ......................................................................................6

      b.  Plaintiff Cannot Allege an Injury in Fact Based on the Speculative Risk that the Products She Bought *Might* Contain *Some Type* of Unidentified PFAS.............................................10

   III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6). ....13

      a.  Plaintiff Does Not Plausibly Allege that Any Aspect of the Product's Packaging or Advertising is Misleading or Deceptive. .......................................................................13

      b.  Plaintiff Does Not Allege an Actionable Omission Under the UCL, FAL and CLRA..............................................................16

      c.  Plaintiff's Allegations are Not Pleaded with Sufficient Particularity Under Rule 9(b). ............................................17

      d.  Plaintiff's Ancillary Claims Fail for Other Reasons.......................19

         i.  Plaintiff Does Not Allege Existence of an Express Warranty or its Breach. ......................................................19

         ii.  Plaintiff's Claim for Unjust Enrichment Duplicates her Other Claims and Fails for the Same Reasons.....20

CONCLUSION......................................................................................................21

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:24-cv-03714

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Procter & Gamble Co.*,
   No. EDCV1900075AGSHKX, 2019 WL 6520045 (C.D. Cal. June 3, 2019)....................7, 10

*In re: Apple Inc. Device Performance Litig.*,
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ......................................................................................5

*Arabian v. Organic Candy Factory*,
   No. 217CV05410ODWPLA, 2018 WL 1406608 (C.D. Cal. Mar. 19, 2018) ........................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................5

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.
   Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ...................................................................15

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ................................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................5, 11

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..................................................................................................13

*Bly–Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ................................................................................................18

*Boysen v. Walgreen Co.*,
   No. C 11-06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012)..............................................10

*Bowen v. Energizer Holdings, Inc.*,
   No. CV214356MWFAGRX, 2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) ...............10, 11

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ......................................................................................................7

*Brown v. Coty, Inc.*,
   No. 22 CIV. 2696, 2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ...............................9, 15, 16

*Brown v. Coty, Inc.*,
   No. 22 CIV. 2696, 2024 WL 894965 (S.D.N.Y. Mar. 1, 2024) ............................................12

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) .............................................................................................9

ii

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...................................................................20

*Davidson v. Sprout Foods, Inc.*,
    106 F.4th 842 (9th Cir. 2024) .............................................................................6, 18, 19

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .................................................................................14

*Esquibel v. Colgate-Palmolive Co.*,
    No. 23-CV-00742, 2023 WL 7412169 (S.D.N.Y. Nov. 9, 2023) .........................11

*Garland v. Children's Place, Inc.*,
    No. 23 C 4899, 2024 WL 1376353 (N.D. Ill. Apr. 1, 2024) ...............................17

*GMO Free USA v. Cover Girl Cosmetics*,
    No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022) .......................................8

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021) .................................................................20

*Harris v. Pfizer, Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022) ...................................................................19

*Hernandez v. Wonderful Co.*,
    No. 23-CV-1242, 2023 WL 9022844 (S.D.N.Y. Dec. 29, 2023) .........................11

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ....................9, 15

*Hicks v. L'Oreal U.S.A., Inc.*,
    No. 22 CIV. 1989, 2023 WL 6386847 (S.D.N.Y. Sept. 30, 2023) ......................11

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .............................................................................16, 17

*In re iPhone 4S Consumer Litig.*,
    No. 12-1127, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) .................................19

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................................17, 18

*Krakauer v. Recreational Equip., Inc.*,
    No. C22-5830, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ......................8, 9

*LiMandri v. Judkins*,
    60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) ..........................................................16, 17

iii

*Lurenz v. Coca-Cola Co.*,
    No. 22 CIV. 10941, 2024 WL 2943834 (S.D.N.Y. June 10, 2024)........................12

*Naimi v. Starbucks Corp.*,
    798 F. App'x 67 (9th Cir. 2019) ............................................................9

*Onaka v. Shiseido Americas Corp.*,
    No. 21-CV-10665-PAC, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023)................12

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019).....................................................15

*Parks v. Ainsworth Pet Nutrition, LLC*,
    No. 18 CIV. 6936, 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020)........................20

*Pels v. Keurig Dr. Pepper, Inc.*,
    No. 19-CV-03052, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .......................10

*Richburg v. Conagra Brands Inc.*,
    No. 22 CV 2420, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023)..........................14

*Robichaud v. Speedy PC Software*,
    No. C 12 04730, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013) ...........................5

*Rodriguez v. Mondelez Global, LLC*,
    No. 23-cv-00057, 2023 WL 8115773 (S.D. Cal. Nov. 22, 2023)........................17

*Seidl v. Artsana, USA, Inc.*,
    643 F. Supp. 3d 521 (E.D. Pa. Nov. 30, 2022) .........................................17

*Solis v. Coty, Inc.*,
    No. 22-CV-0400, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ....................10, 16

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    No. 19-1298, 2021 WL 62502 (C.D. Cal. Jan. 4, 2021) ................................20

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................6

*Steckman v. Hart Brewing Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ...............................................................8

*Swanson v. USProtect Corp.*,
    No. C 05-602, 2007 WL 1394485 (N.D. Cal. May 10, 2007)...........................20

*Yu v. Dr. Pepper Snapple Group, Inc.*
    No. 18-CV-06664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) .......................15

iv

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................5, 18

*Zahora v. Orgain LLC*,
   No. 21 C 705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021)......................................14

**Statutes and Regulations**

Cal. Com. Code § 2313 ...........................................................................................19

Cal. Health & Saf. Code, §108945...........................................................................2, 10

Cal. Health & Saf. Code, §108970.............................................................................10

Cal. Health & Saf. Code, §108981.............................................................................10

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.................................4

California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*................................4

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*..............................4

New York Gen. Bus. Laws §§ 349-50 ..........................................................................2, 4

21 C.F.R. § 175.300 ..............................................................................................3

21 C.F.R. § 176.170 ..............................................................................................3

21 C.F.R. § 177.1550 ............................................................................................3

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:24-cv-03714

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Using the term "PFAS" as a bogeyman, Plaintiff's Complaint seeks nothing more than to scare innocent parents into believing that they are risking harm to their children by using Kirkland Signature Baby Wipes (the "Product") as part of their regular hygiene care. But Plaintiff does not allege the presence of "toxic" PFAS at "dangerous" levels in **any** of the Products, ***whatsoever***. As Plaintiff readily admits, perfluoroalkyl and polyfluoroalkyl substances ("PFAS") are a class of chemicals that includes more than 12,000 different compounds with various chemical properties. The overwhelming majority of the chemicals have never been associated with any health risk to anyone. To the contrary, the Food and Drug Administration ("FDA"), the federal agency charged with food safety, has expressly authorized the use of some PFAS in cosmetics and food contact applications. On the other hand, the U.S. Environmental Protection Agency ("EPA"), the federal agency charged with protecting consumers from harmful chemicals, has identified only a handful of specific PFAS chemicals of concern. Plaintiff identifies none of those chemicals in her Complaint.

PFAS are commonly used in thousands of products because they have desirable chemical properties that impart oil and water repellency, friction reduction, and temperature resistance. Yet by using the generic term PFAS, Plaintiff purposely fails to differentiate between the good and the bad, and thus cannot plausibly allege any risk—and certainly no deception—from their alleged incidental presence in the Products.

Indeed, Plaintiff does not even plausibly allege there was *any* PFAS in *her* product. She does not, and cannot, allege that PFAS was an added ingredient to the Product, because it is not. And despite citing the alleged bona fides of an unnamed laboratory, Plaintiff provides no details about the product being tested, including when and where it was purchased or even whether Plaintiff herself purchased the product tested. Courts across the country evaluating allegations by plaintiffs asserting the presence of PFAS in myriad products have recognized that in order to bring a claim based on contamination, a plaintiff must plausibly allege *at minimum* that there was more

than a "sheer possibility" that her product—and not just some hypothetical product—was contaminated.

Plaintiff makes no allegation that she or her children have in fact suffered any harm from the use of Defendants' baby wipes. No Plaintiff or child has suffered—or indeed is alleged to be at increased risk for—any of the diseases listed in Plaintiff's Complaint. As proudly displayed on the label, the Products *are* made "with naturally derived ingredients" and from "plant-based fibers." They *are* "hypoallergenic" and do not contain certain categories of ingredients—such as chlorines, certain alcohols, dyes, parabens, or phthalates. These statements on the label are all true and *Plaintiff does not allege otherwise.*

These pleading failures—evident on the face of the Complaint—doom all of Plaintiff's causes of actions. Plaintiff cannot satisfy the basic standing requirements under Article III because she cannot establish that she herself has suffered any "actual or imminent, not conjectural or hypothetical" injury. *See* Sect. II, *infra.* Moreover, the Complaint fails to state a cause of action because there is no plausible allegation that any statement to which she points is false or misleading. *See* Sect. III.a., *infra.* Nor does she support her fraud claims with the required specificity under Rule 9(b) by identifying any false statement by any representative of any defendant on which she relied. *See* Sect. III.c. Defendants respectfully submit the Complaint should be dismissed in its entirety.[1]

## FACTUAL BACKGROUND

### I.    The PFAS Group and their Regulation.

The State of California defines PFAS as a class of fluorinated organic chemicals containing at least one fully fluorinated carbon atom.[2] A variety of U.S. government agencies recognize that only a  select few PFAS potentially have impacts on health and the environment. For example, the EPA states: "[t]here are ***thousands*** of PFAS with potentially varying effects and toxicity levels"

---

[1] Plaintiff Mila Corrigan, a New York resident, has filed a voluntarily dismissal of her claims without prejudice,  which includes all claims under the New York General Business Laws or on behalf of a New York subclass. Dkt. No. 15.

[2] *See, e.g.*, *Health & Saf. Code*, §108945 ("'Perfluoroalkyl and polyfluoroalkyl substances' or 'PFAS' means a class of fluorinated organic chemicals containing at least one fully fluorinated carbon atom.")

but only "exposure to *some* PFAS in the environment may be linked to harmful health effects in humans and animals." *See Declaration of E. Alex Beroukhim* ("*Beroukhim Decl.*"), and accompanying Request for Judicial Notice, at Exs. A, B (emphasis added.). Other substances that are considered PFAS, such as FEP and PTFE, have been specifically approved for use in cosmetics and the production and distribution of food by the FDA after a comprehensive review of their safety. *Beroukhim Decl.*, Exs. C, D. These PFAS are safely and legally used in cookware, food packaging, and in food processing "for their non-stick and grease, oil, and water-resistant properties" and for use in cosmetics. *Id*. at Ex. C. The FDA determined that these substances "are safe for their intended use" by conducting "rigorous scientific review before they are authorized for the market." *Id*. Indeed, over ten thousand fluorinated organic substances could fall under Plaintiff's blanket description of "PFAS" without posing any risk to Plaintiff or her children. *See, e.g.*, 21 C.F.R. § 177.1550, 21 C.F.R. § 176.170, 21 C.F.R. § 175.300.

## II.    The Allegations in Plaintiff's Complaint.

Plaintiff resides in San Ramon, California, and claims that she purchased the Product "multiple times" since January 2022, and most recently in February 2024. Compl. ¶ 6. Plaintiff claims she relied on "image[s] of a happy baby" on the Product's packaging, and the statement that the Product is "made with naturally derived ingredients," which conveyed to her that the Product was safe for use on infants and toddlers. Plaintiff claims that had she known that the Product contained "dangerous levels of toxic PFAS chemicals," she may not have purchased the Product, or would have "purchased it under substantially different terms." *Id.*

Plaintiff does not allege that she tested the Products she purchased. Rather, her lawyers conducted testing of the Products through an unidentified laboratory that allegedly "revealed the Product contains 3.7 parts per billion (PPB) of PFAS." *Id.* ¶ 4. Notably absent from the Complaint is any allegation as to which of the thousands of PFAS chemicals the laboratory found or whether it was one scientists have identified as potentially toxic. Other than a single sentence describing its purported finding, Plaintiff does not allege any detail about her testing, such as: (1) how many Products were tested; (2) whether all, some, or one of the Products her lawyers tested contained

PFAS; (3) where and when the Product(s) submitted for testing were purchased; (4) whether the tested Product(s) were previously used; or (5) what type of "test" the laboratory even performed.

The Complaint cites to extrinsic statements on Costco's website, including that the Product is "gentle on your baby's skin," "made with purified water," provides a "gentle clean," or "[g]ently cleanse[] and moisturize[] sensitive skin" that Plaintiff does not allege she even saw before purchase. *Id.* ¶ 18. Plaintiff does not point to any (express) statement—on the website, packaging or otherwise—that the Product is PFAS-free. The Complaint also highlights statements on the Product packaging, which represent that the Product is "naturally derived," "hypoallergenic," made with "plant-based fibers" and that it does not contain certain categories of ingredients or substances, including chlorine, certain alcohols, dyes, parabens, or phthalates. *Id.* ¶ 16. Nowhere in the Complaint, however, does Plaintiff plausibly allege that any of those statements are untrue: Plaintiff does not allege that any of the ingredients used in the actual manufacturing of the Product are not "naturally derived;" she does not allege that the Product contains allergens; she does not allege that the Tencel® fibers used in the Product's cloth are not "plant-based"; she does not allege that the Product contains chlorine, alcohols, dyes, parabens or phthalates; and she does not allege that it fails to clean or moisturize a child's skin as expected. Indeed, she does not allege that she or her child—or anyone else—has experienced any adverse reaction from the Products at all.

Plaintiff brings claims against Defendants individually and on behalf of a class of all others similarly situated for (1) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); (6) breach of express warranty; (7) unjust enrichment; (8) fraud; (9) Fraudulent Concealment or Omission; and (10) Negligent Misrepresentation. *Id.* ¶ 5.[3]

---

[3] The Complaint also includes Counts 4 and 5, for violation of New York Gen. Bus. Laws §§ 349-50. However, the sole New York plaintiff has since dismissed her claims (Dkt. No.15), and those claims may be dismissed on that ground alone.

# ARGUMENT

## I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations that, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]onclusory statements," including those "couched as [] factual allegation[s]," are not "entitled to the assumption of truth" and must be disregarded. *Id.* at 678-79 (quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also id.* ("labels and conclusions" "will not do" (quotation marks omitted)). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

State consumer protection claims, such as claims under the CLRA, UCL, and FAL, "that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *In re: Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 443-44 (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). When claims are asserted on a "unified course of fraudulent conduct," each claim must be pled with particularity, regardless of whether fraud is an element of the specific cause of action. *Vess*, 317 F.3d at 1103-04; *see, e.g.*, *Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013) (finding that claims for violation of the UCL, fraudulent inducement, breach of express warranties, breach of contract, and breach of implied covenant of good faith and fair dealing must all be pled with particularity because they "rely on a uniform course of fraudulent conduct"). In the Ninth Circuit, "[t]his means the complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent

statement and why it is false.'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

## II.    PLAINTIFF CANNOT ESTABLISH ARTICLE III STANDING, AND HER COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1).

Plaintiff fails to plausibly allege that she was injured because she does not allege that any harmful substance was present in the Product. Plaintiff bears the burden of establishing Article III standing by pleading "facts demonstrating" that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the [Defendants], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Unless an injury affects the "plaintiff in a personal and individual way," it is not "particularized" and, thus, cannot form the basis for Article III standing. *Id.* (quoting *Lujan*, 497 U.S. at 889 n.1). Here, Plaintiff's claims hinge on two central points: (1) that independent testing "revealed" the purported presence of 3.7 ppb of "PFAS" in a sample of the Product; and (2) that she was economically injured from the risk that the Products she purchased contained "toxic" PFAS compounds at "dangerous" levels. Compl. ¶¶ 4, 6. But Plaintiff never connects one allegation to the other—she never identifies which of the thousands of PFAS compounds in existence her testing supposedly found or links them to the type considered potentially harmful. Without those essential facts, she lacks standing.

    a.    <u>Plaintiff Does Not Plausibly Allege that "Toxic" PFAS at "Dangerous" Levels was Present in Any Unit of the Product.</u>

The Complaint lumps the entire class of PFAS chemicals as a single entity and repeatedly asserts that "PFAS" are harmful. *See, e.g.,*, Compl. ¶¶ 2-3, 6-9, 21-34, 38-39, 41-48, 55, 66, 69, 82, 89, 91-92, 99. But the articles that Plaintiff relies on, on their face, do not support these bare

allegations.[4] Rather, the articles consistently differentiate between the various types of PFAS, recognizing that only certain ones, at certain levels, might be harmful:

- **In Paragraph 3,** Plaintiff cites an article by the Agency for Toxic Substances and Disease Registry ("ATSDR") that identifies "associations between increases in exposure to (specific) PFAS and certain health effects," where only long-chain PFAS is identified. *Id.* ¶ 3 n.3; *Beroukhim Decl.* at Ex. E. Plaintiff does not allege that a long-chain PFAS was identified in the Product.

- **In Paragraph 21,** Plaintiff relies on an article by the National Institute of Environmental Health Sciences, which clarifies that the "the research conducted to date reveals possible links between human exposures to ***certain*** PFAS and some adverse health outcomes" and specifically that "***two types*** of PFAS, PFOA and PFOS . . . were a hazard to immune system function in humans." Compl. ¶ 21 n.7; *Beroukhim Decl.* at Ex. F (emphasis added). Plaintiff does not allege that either PFOA or PFOS were found in her testing of the Product.

- **In Paragraph 22,** Plaintiff alleges that "research from the U.S. National Toxicology Program (NTP) suggests that both long chain and short chain PFAS have similar levels of toxicity," but the research itself only states that "adverse effects" could exists in "one type of PFAS known as PFDA;" cites studies analyzing the effects of long chain PFAS such as PFOA and PFOS; and makes statements that "***[c]ertain*** PFAS [among the four specific compounds it tested] could impact neurodevelopment." Compl., ¶ 22 n.10; *Beroukhim Decl.* at Ex. G (emphasis added). Plaintiff does not allege that any of these substances are present in the Product.

- **In Paragraph 23,** Plaintiff relies on an article by Toxic Free Future that references PFOA and cites to the ATSDR, who analyzed only 12 specifically enumerated compounds and cautions that its conclusions "***may not be applicable to other perfluoroalkyl compounds***." Compl. ¶ 23 n.11; *Beroukhim Decl.* at Ex. H, at n.4, citing the ATSDR's Toxicological Profile for Perfluoroalkyls at p.1 (emphasis added). But Plaintiff does not allege that any of the 12 compounds analyzed by ATSDR were present in the Product.

---

[4] Under the doctrine of incorporation by reference, on a Motion to Dismiss, the Court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions,  but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *see also Andrews v. Procter & Gamble Co.*, No. EDCV1900075AGSHKX, 2019 WL 6520045 (C.D. Cal. June 3, 2019) (relying upon contents of articles cited in complaint in dismissing plaintiff's allegations regarding PFAS).

- **In Paragraph 24,** Plaintiff cites an article by the Ecology Center referring to packaging guidelines that prohibit intentionally added PFAS at levels far greater than those alleged here, and otherwise do not apply to the Product. Compl. ¶ 24 n.12; *Beroukhim Decl.* at Ex. I. Indeed, Plaintiff does not allege that any PFAS was intentionally added to the Product;

- **In Paragraph 25,** Plaintiff references an article by the Michigan PFAS Action Response Team, which clarifies that drinking and groundwater standards only restrict ***certain*** listed PFAS chemicals, none of which are alleged to be present in the Product. Compl. ¶ 25 n.13; *Beroukhim Decl.* at Ex. J.

While Plaintiff hides behind the generalized (and untrue) statement that all PFAS are the same, this court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Nor does the regulatory landscape treat all PFAS equally. For instance, the FDA recognizes that PFAS are a "diverse group" of substances used in "a wide range of consumer and industrial products" and specifically authorizes the use of PFAS, like PTFE, in some products. *Beroukhim Decl.* at Exs. C, D; *see also* Ex. K, *GMO Free USA v. Cover Girl Cosmetics*, No. 2021 CA 004786 B (D.C. Super. Ct. June 1, 2022), at 4 ("the Court takes judicial notice of the fact that different PFAS have potential different health effects and that PTFE has not been found to be toxic or environmentally unsafe"). Similarly, just three specific long-chain PFAS substances have been regulated by California's Proposition 65, including PFOA, PFOS, and PFNA.[5] As noted, Plaintiff does not allege these PFAS were identified in the Product.

Courts have repeatedly rejected the same reliance on generalized references to PFAS that Plaintiff employs here. In *Krakauer v. Recreational Equip., Inc.*, No. C22-5830 BHS, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024), the plaintiff (represented by the same law firm representing Plaintiff here) alleged that his rain jacket contained dangerous levels of PFAS. The plaintiff relied on three separate tests of REI's rain jackets, each of which he alleged indicated high levels of PFAS

---

[5] *Proposition 65 List of Carcinogens or Reproductive Toxicants*, State of California Environmental Protection Agency, Office of Environmental Health Hazard Assessment (Dec. 29, 2023), https://oehha.ca.gov/media/downloads/proposition-65//p65chemicalslist.pdf (last accessed July 27, 2024).

(thousands of times higher than the trace levels Plaintiff alleges here). *See id.* at Dkt. 19. The *Krakauer* plaintiff cited materials by Toxic Free Future, the NTP and ATSDR (the same organizations cited by this Plaintiff) to support his allegations that "PFAS" generally were harmful or toxic. *Id.* at ¶¶ 97, 98, 100. But the court correctly recognized that while the complaint "lack[ed] explicit concessions that PFAS differ in toxicity, the sources in his complaint make plain that not all PFAS are considered equally toxic." *Krakauer*, 2024 WL 1494489, at *6. Accordingly, the court held that "[t]o the extent that Krakauer alleges that all PFAS are dangerous at any level sufficient to cause injury, this allegation is conclusory and contradicted by some of the sources that Krakauer himself cites." *Id.* Ultimately, the *Krakauer* court dismissed plaintiff's claims for lack of standing because, among other failures, he did not "specify the type or amount of PFAS in the products." *Id.* at *5. Other courts are in accord. *See*, *e.g.*, *Brown v. Coty, Inc.*, No. 22 CIV. 2696, 2023 WL 2691581, at *5 (S.D.N.Y. Mar. 29, 2023) (dismissing complaint where plaintiff did "not specify which PFAS were present in Lash Blast or at what levels").

Without those essential facts, Plaintiff cannot plausibly allege economic injury—that she actually paid a premium or paid more than she would have for a comparable product that did contain PFAS. "The bare recitation of the word 'premium' does not adequately allege a cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019); *see also Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723-24 (9th Cir. 2017) (affirming dismissal of UCL, CLRA and FAL claims where plaintiffs "have only made conclusory allegations that their cars are worth less and have not alleged sufficient facts to establish Article III standing").

Plaintiff also fails to credibly allege that the *amount* of the specific PFAS substance allegedly found in the Product would be considered dangerous. In *Herrington v. Johnson & Johnson Consumer Cos.*, this court dismissed plaintiffs' claims for lack of Article III standing where they did not "plead that the amounts of the substances in Defendants' products have caused harm or create a credible or substantial risk of harm." No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010). Here, Plaintiff does not allege that the single PFAS substance found in its testing is present at a "dangerous" level, and even the total amount of the unidentified PFAS

alleged to be in the Product—3.7 ppb—is nearly 300 times lower than California's 100 ppm limit[6] for certain consumer products and food packaging. *See also Boysen v. Walgreen Co.*, No. C 11-06262, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (no economic injury where fruit juice consumer pled "that arsenic and lead are harmful toxins, and that the products contain those toxins," but not "that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm," even though he alleged "material and significant levels"); *Andrews*, 2019 WL 6520045, at *3 (dismissing consumer fraud claims based on the alleged presence of PFAS because plaintiff "fail[ed] to adequately allege [the product] contains elevated amounts of PFASs.").

      b.   <u>Plaintiff Cannot Allege an Injury in Fact Based on the Speculative Risk that the Products She Bought *Might* Contain *Some Type* of Unidentified PFAS.</u>

Putting aside whether all PFAS are potentially harmful (and, again, there is not, and cannot be, any credible allegation that they are), Plaintiff has not plausibly alleged that the Products *she* bought contain PFAS, and therefore has not established an injury in fact sufficient to support Article III standing. "[T]o demonstrate a particularized economic injury" Plaintiff "must proffer allegations that enable this Court to infer she purchased a unit of Product contaminated with PFAS." *Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *10 (S.D. Cal. Mar. 7, 2023) (dismissing claims alleging the presence of PFAS in cosmetics products for lack of standing). Here, the Complaint only alleges that "independent research conducted by Plaintiff's counsel" of some random sample of the Product "contain[ed] 3.7 [ppb] of PFAS." Compl. ¶ 4.

In consumer fraud cases involving allegations of other incidental contaminants, courts in this District have held that a plaintiff needs to plausibly allege that the alleged harmful chemical is present in the unit that plaintiff themselves actually purchased. For example, in *Pels v. Keurig Dr. Pepper, Inc.*, this Court dismissed claims because "plaintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels." No. 19-CV-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (emphasis in original). Similarly, in *Bowen v. Energizer Holdings, Inc.*, where plaintiff alleged a risk of benzene exposure in her

---

[6] *See, e.g.*, Cal. Health & Saf. Code, §§ 108945, 108970, 108981, 108981.5.

products based on the testing of product samples done by a third-party laboratory, the Court explained: "Plaintiff's claim is based on the ***hypothetical*** possibility that the products she purchased ***may*** have contained benzene—not that she purchased a product that demonstrably did contain benzene . . . . Plaintiff has not adequately pled that her injury is sufficiently particularized to demonstrate standing." No. CV214356MWFAGRX, 2022 WL 18142508, at *4 (C.D. Cal. Aug. 29, 2022)(emphasis in original). Plaintiff here alleges even less than those cases—she cannot even tell the Court ***what*** she has found in the Product, let alone plausibly allege that the same trace substances are in any other unit of the Product, much less the ones she bought.

Plaintiff also fails to allege any detail about the testing her lawyers conducted: she does not state how many products were tested; when the tests occurred; how the products were sampled and tested; which specific PFAS analytes were found in the products; and whether PFAS was purportedly found in some or all of the samples tested. These details are critical to assess whether the risk that her purchases contained "toxic" PFAS at "dangerous" levels is plausible, or simply conceivable. *Twombly*, 550 U.S. at 570.

Courts have dismissed a host of PFAS cases for failure to connect isolated product testing to a risk of harm in the product plaintiff purchased. For example, in *Hicks v. L'Oreal U.S.A., Inc.*, the court dismissed claims alleging PFAS in personal care products because plaintiff did not describe "how many products were tested in Plaintiffs' Study, whether all those tested products revealed the presence of PFAS, and if not, what percentage of the products had PFAS," such that plaintiffs' allegations "boil[ed] down to describing general and unspecific results of testing, without meaningfully linking those results to Plaintiff's actual Purchased Products." No. 22 CIV. 1989, 2023 WL 6386847, at *8-9 (S.D.N.Y. Sept. 30, 2023). In *Esquibel v. Colgate-Palmolive Co.*, the court dismissed similar claims, explaining that the presence of PFAS in the purchased products was no more than a "sheer possibility" because "[Plaintiffs] do not allege that bottles they actually purchased were tested, nor do they even plead facts indicating how many units of the Product were tested, where those units were acquired, where the test took place, or what entity performed the test." No. 23-CV-00742, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023). And in *Hernandez v.*

1  *Wonderful Co.*, the court found that plaintiff's "failure to plead specific facts concerning the third-
2  party testing forming the basis of her allegations that the Product contains PFAS chemicals [was]
3  fatal to her claim." No. 23-CV-1242, 2023 WL 9022844, at *5 (S.D.N.Y. Dec. 29, 2023).
4  "[W]ithout such details" the court reasoned that plaintiff "is left with only conclusory allegations
5  insufficient to plausibly allege that the bottle(s) she purchased of the Product contained PFAS." *Id.;*
6  *see also Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665-PAC, 2023 WL 2663877, at *5
7  (S.D.N.Y. Mar. 28, 2023) (plaintiffs "provide[d] no facts from which the Court could extrapolate
8  that their isolated testing should apply broadly to Defendant's Products"); *Lurenz v. Coca-Cola
9  Co.*, No. 22 CIV. 10941, 2024 WL 2943834, at *3 (S.D.N.Y. June 10, 2024) (plaintiff's allegations
10  of PFAS in orange juice could not establish standing because they were "based solely on a single
11  independent test he had commissioned . . . . the findings from that test . . . do not plausibly allege
12  any injury with respect to the Products Plaintiff himself purchased").

13     The same failings plague Plaintiff's claims here. The Complaint does not allege any facts
14  that would support the inference that the presence of PFAS in one sample the Product, if any, was
15  more than a random event. "Without more, the Court cannot know if all tested [units] tested positive
16  for similar levels of the identified PFAS—or if a single tube tested positive, while every other tested
17  tube showed no signs of PFAS." *Brown v. Coty, Inc.*, No. 22 CIV. 2696, 2024 WL 894965, at *4
18  (S.D.N.Y. Mar. 1, 2024). This is especially true here, where Plaintiff makes no allegations
19  connecting the presence of PFAS to any intentionally added ingredient in the Product, a known
20  degradant of an ingredient, or any aspect of the manufacturing process. Under such circumstances,
21  "the Court cannot plausibly infer that the [units of the Product] purchased by Plaintiffs over a span
22  of years contain PFAS." *Id.* Plaintiff cannot establish injury-in-fact under these facts. She
23  resultantly lacks standing under Article III to pursue her claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6).

### a.    Plaintiff Does Not Plausibly Allege that Any Aspect of the Product's Packaging or Advertising is Misleading or Deceptive.

Even assuming that Plaintiff could sufficiently allege the presence of "toxic" PFAS at "dangerous" levels in the Product or the unit she purchased—which, as discussed in Section II, above, she cannot—she still fails to plausibly allege that a reasonable consumer would interpret true and accurate statements from Product packaging and advertising ***unconnected to PFAS*** as a representation that the Product is PFAS-free.

Plaintiff's statutory consumer fraud claims and common-law claims for fraud and negligent misrepresentation are all premised on the allegation that the Product's packaging contains misrepresentations and/or omissions about the ingredients in the Product.[7] Each of these claims is analyzed under the "reasonable consumer" test, which requires that Plaintiff "show that members of the public are likely to be deceived" by the identified statements or advertising. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citations omitted). Here, Plaintiff cites true and accurate statements about the Product's composition lifted from its packaging and a collection of nonactionable online statements about the Product's performance. Taken together, she does not allege consumer deception.

Plaintiff's principal claim is that the phrase "Naturally Derived Ingredients" and the presence of a "smiling, happy baby" communicated that the Product was free of the possible incidental presence of "toxic, unsafe PFAS chemicals." *See, e.g.*, Compl. ¶¶ 16, 66. Setting aside that Plaintiff never alleges the presence of a toxic or unsafe chemical in the Product, she also fails to allege why the challenged statement "naturally derived ingredients" is false or misleading. Plaintiff does not allege that PFAS is an ingredient in the Product, nor does she allege that the listed ingredients in the Product are not derived from nature.

---

[7] Because Plaintiff cannot establish Article III standing, she similarly cannot establish standing sufficient to satisfy her UCL claim. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-61 (9th Cir. 2009) (equating UCL standing requirements to Article III standing requirements, and concluding plaintiff failed to adequately allege standing where the alleged injury was "conjectural and hypothetical").

1

2

3

4

5

6

7

8

Rather than simply interpret the statement "Naturally Derived Ingredients" for what it says—that the Product's listed ingredients are naturally derived—Plaintiff reads the statement to exclude the presence of any incidental contaminant or impurity, including those, like PFAS, that are commonly found in nature. In search of a claim, Plaintiff repeats the same logical leap with other statements on the Product label that are also untethered to PFAS. Compl. ¶ 45 ("Defendants likewise affirmatively and prominently warrant on the front packaging to consumers that harmful chlorine, alcohol, dyes, parabens and phthalates have been excluded from the Product, thereby implying to consumers that it is free of toxic chemicals as the consumers bargained for.").

9

10

11

12

13

14

15

16

17

18

The reasonable consumer standard demands more than a mere possibility that the label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Plaintiff does not (and cannot) challenge the validity of these statements—the Product is made with naturally derived ingredients and without chorine, alcohol, dyes, parabens, and phthalates. Instead, she reads an *entirely separate class of chemicals* into the express representations on the Product packaging. Reasonable consumers cannot be expected to do the same.

19

20

21

22

23

24

25

26

In *Richburg v. Conagra Brands, Inc.*, the Court rejected plaintiffs' claim that reasonable consumers would find it plausible that an "only real *ingredients*" claim on a product label would mean that a microwaveable popcorn product is PFAS-free. No. 22 CV 2420, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023) (emphasis in original.). The same is true here: Plaintiff's claims of consumer deception are foreclosed because it is not plausible for a reasonable consumer to make the leap from "Naturally Derived Ingredients" to PFAS-free. "A reasonable consumer would not read into the label what is simply not there." *Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021).

27

28

Courts in this District agree that reasonable consumers *would not* draw the same tortured reading of the challenged statements as Plaintiff. In *Yu v. Dr. Pepper Snapple Group, Inc.*, this Court dismissed plaintiff's UCL, FAL, and CLRA claims based on representations of "natural" products because "a reasonable consumer would [not] believe that . . . [applesauce and apple juice] labeled natural are free of any trace pesticides whatsoever." No. 18-CV-06664-BLF, 2020 WL 5910071, at *7 (N.D. Cal. Oct. 6, 2020). Relying on the reasoning in two nearly identical cases, the court rejected the notion that "reasonable consumers interpret the word natural to mean a food product that is completely free of any trace pesticides." *Id.* at *4; *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 174 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ("[g]iven the widespread use of herbicides," it was "implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate."); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (holding that a "reasonable consumer would not be so absolutist to require that 'natural' means there is no [synthetic pesticide], even an accidental and innocuous amount," in dog food).

Nor does Plaintiff identify what substances she found in the Product or credibly allege that any is harmful. *See* Sect. II, *supra*. Without those critical details, Plaintiff cannot allege that any challenged statement is materially misleading. In *Herrington*, Judge Wilken dismissed a putative consumer class action alleging that "bath products for children that contain probable carcinogens and other unsafe substances," because plaintiffs did not "aver[] facts that show that the levels of these substances caused them or their children harm." 2010 WL 3448531, at *1, 8. "[U]nder the objective test for materiality," Judge Wilken reasoned, "the alleged non-disclosures are not actionable." *Id.* at *8. The same is true here.

Last, Plaintiff cannot gesture to abstract notions of safety or quality to avoid resolution on a motion to dismiss. As pleaded, her Complaint does not allege the presence of any specific substance that would cast doubt on the Product's quality or safety. Courts have regularly dismissed PFAS claims where the plaintiff does not allege the specific types of PFAS present in the product and

connect those substances to a risk of harm that would devalue it. *See, e.g.*, *Brown*, 2023 WL 2691581, at *5 ("Brown does not specify which PFAS were present in Lash Blast or at what levels . . . As a result, Brown has not sufficiently pleaded that Lash Blast is actually unsafe such that it is not of the 'qualify and safety promised' at the time of purchase."). Nor can Plaintiff summarily allege that advertisements that the Product provides a "gentle" clean equate to an actional representation about PFAS. *Solis*, 2023 WL 2394640, at *7 ("the Product's label represents the cosmetic is 'dermatologically tested' and 'suitable for sensitive skin,' [which] simply fails to draw a cogent nexus between those statements and [plaintiff's] belief the Product she purchased was PFAS-free."). The allegations in Plaintiff's Complaint confirm that she received the high-quality Product she bargained for—on that basis, she has not plausibly alleged deception.

> b.  <u>Plaintiff Does Not Allege an Actionable Omission Under the UCL, FAL and CLRA.</u>

Plaintiff cannot state a claim under the California consumer protection laws by omission. Actionable omissions under the UCL, FAL or CLRA must be (1) contrary to a representation actually made by the defendant, or (2) an omission of a fact the defendant was obliged to disclose. *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018). California courts have generally rejected a broad duty to disclose. *Id.*

Plaintiff does not allege *any* representation on the Product's packaging or advertising plausibly connected to the incidental presence of PFAS, as is set forth in Section III.a, *supra*. Nor are Defendants expected to disclose a speculative risk of the incidental presence of "PFAS." A defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, central to the product's function, and the plaintiff alleges one of the four factors set forth in *LiMandri v. Judkins*—that, (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts. 60 Cal. Rptr.

2d 539, 543 (Cal. Ct. App. 1997); *see also Hodsdon*, 891 F.3d at 868 (affirming dismissal of CLRA, UCL, and FAL omission claims for failure to allege facts establishing a duty to disclose).

Plaintiff does not plausibly allege any of these elements. Plaintiff's failure to identify the PFAS her testing allegedly found forecloses her ability to plausibly allege the existence of an "unreasonable safety hazard" or a defect that is "material" or "central to the product's function." *Rodriguez v. Mondelez Global, LLC*, No. 23-cv-00057-DMS-AHG, 2023 WL 8115773, at *10 (S.D. Cal. Nov. 22, 2023). Plaintiff has not alleged the existence of ***any*** PFAS of the type considered by regulators to potentially cause harm or a level of PFAS that would exceed any existing applicable law or regulation. *See* n.6, *supra*. Nor has she plausibly alleged any of the *LiMandri* factors: the parties are not in a fiduciary relationship, and her unspecific testing allegations do not amount to the existence of a "material fact," much less one that Defendants "actively concealed" or "suppressed." *LiMandri*, 60 Cal. Rptr. 2d at 543.

Courts around the country agree—reasonable consumers do not expect disclosures as to the potential risk of exposure to trace amounts of incidental PFAS. *See Seidl v. Artsana, USA, Inc.*, 643 F. Supp. 3d 521, 531 (E.D. Pa. Nov. 30, 2022) (Plaintiff "might prefer that [defendant] provide an unambiguous disclaimer that its car seats contain these chemicals, [b]ut [her] own personal preferences are not enough to establish a claim"); *see also Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353, at *7 (N.D. Ill. Apr. 1, 2024) ("it is not plausible that a reasonable consumer would interpret TCP's silence on the issue of PFAS to indicate that its school uniforms were 100 percent PFAS-free"). This case is no different.

    c.  <u>Plaintiff's Allegations are Not Pleaded with Sufficient Particularity Under Rule 9(b).</u>

Federal Rule of Civil Procedure 9(b) requires that claims "sounding in fraud," such as each cause of action alleged here, be stated with particularity. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (applying Rule 9(b) to allegations brought under the UCL and CLRA). All claims that arise from a "unified course of fraudulent conduct" must be pleaded with particularity, regardless of whether fraud is an element of each claim. *Arabian v.*

*Organic Candy Factory*, No. 217CV05410ODWPLA, 2018 WL 1406608, at *3–4 (C.D. Cal. Mar. 19, 2018) (finding claims were grounded in fraud and therefore subject to Rule 9(b)'s heightened pleading requirement). The particularized allegations must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Allegations of fraud must be "accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F. 3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiff's allegations that the Product might contain unspecified "PFAS," based solely on "research" conducted by her lawyers, is insufficient to meet Rule 9(b). Compl. ¶ 4. Particularly, Plaintiff fails the "what": she has failed to identify the chemicals that are present and—equally importantly—link those substances to those that are "toxic" or present at "dangerous" levels. Both are required to state a claim under Rule 9(b). Moreover, as discussed in Section II, PFAS are a broad and diverse group of chemicals. *See, e.g.*, *Beroukhim Decl.*, Ex. A ("[T]here are thousands of PFAS with potentially varying effects and toxicity level."). The FDA specifically permits some forms of PFAS to be used as food contact materials and recognizes the use of PFAS in cosmetics (where a pre-approval process does not exist).

Given that all PFAS chemicals are not the same—and in particular will have different properties and potential environmental impacts, if any—generic allegations about "PFAS" as a group do not meet the plausibility standard, let alone Rule 9(b)'s heightened pleading standard. This Ninth Circuit Court of Appeals reached the same conclusion in *Davidson v. Sprout Foods, Inc.*, where it dismissed a plaintiff's "largely unspecific" allegations that defendant Sprout's misleadingly advertised the nutrient content of its products under Rule 9(b). 106 F.4th 842, 853 (9th Cir. 2024). In *Davidson*, the plaintiff alleged that Sprout's fruit puree products "'contain high amounts of free sugars' accompanied by a list of the grams of sugar in some of the products," which this Court and, on appeal, the Ninth Circuit concluded "d[id] not explain at what level sugars become harmful or why the levels of sugar in these products, in particular, could cause harm." *Id.*

- 18-

The same flaw exists here. Plaintiff alleges the presence of trace amounts of unidentified PFAS but does not allege how those levels are harmful. Rule 9(b) requires more than this sort of conclusory allegation.

What's more, Plaintiff here cannot plausibly allege that any of the incidental PFAS substances she may have found in one Product would be present in any other unit of the Product, much less at similar levels because, unlike the facts in *Davidson* where sugar was an ingredient, it is undisputed that PFAS is not an ingredient in the Products. Without precision as to which of the thousands of PFAS were allegedly found in the Product, and a connection between those substances and levels to an established harm, Plaintiff's allegations here lack context, and cannot form the basis of an actionable claim.

     d.  <u>Plaintiff's Ancillary Claims Fail for Other Reasons.</u>

        i.  *Plaintiff Does Not Allege Existence of an Express Warranty or its Breach.*

Plaintiff's express warranty claims fail because she does not allege the existence of an express warranty that Defendants breached. California has adopted the Uniform Commercial Code's definition of express warranty, which states that "[t]o bring a claim for breach of warranty, [Plaintiff] must plausibly allege that [Defendants] breached some affirmation, promise, or description related to the goods that became a 'basis for the bargain.'" Cal. Com. Code § 2313; *Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 244 (2022) (citation omitted). To make out a claim, Plaintiff must identify a "'***specific and unequivocal*** written statement' about the product that constitutes an 'explicit guarantee.'" *In re iPhone 4S Consumer Litig.*, No. 12-1127, 2014 WL 589388, at *8 (N.D. Cal. Feb. 14, 2014) (empasis added.). Plaintiff does not. Instead, she alleges only that Defendants "purport," through unidentified marketing and labeling statements, "to create express warranties that the Product is comprised of naturally derived materials, provides a 'gentle' cleaning, and are [sic] therefore free of toxic chemicals." Compl. ¶ 123. That is not enough. Plaintiff notably does not allege any statements warranting the Products to be free from PFAS, nor has she plausibly alleged the Products contain PFAS. *See also*, *e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, No. 18 CIV. 6936, 2020 WL 832863, at *2 (S.D.N.Y. Feb. 20, 2020) ("a reasonable consumer

- 19-

would not interpret the label 'natural' as a warranty that the Products do not contain any glyphosate, even a negligible amount"). Plaintiff's breach of express warranty claim also fails to the extent it arises from alleged omissions—by their nature, omissions cannot "serve as the basis" for an *express warranty* claim. *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-1298, 2021 WL 62502, at *12 (C.D. Cal. Jan. 4, 2021).

> *ii.  Plaintiff's Claim for Unjust Enrichment Duplicates her Other Claims and Fails for the Same Reasons.*

Plaintiff's unjust enrichment claims fail for the same reasons as her other claims. *See, e.g., Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) ("plaintiff's failure to identify an actionable deception in the context of the 'reasonable consumer' test also requires the dismissal of her unjust enrichment claim"). The unjust enrichment claim is also subject to dismissal under California and New York law on the ground that it is duplicative, as Plaintiff does not meaningfully distinguish her unjust enrichment claim from her other claims for false advertising. *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012). Federal courts have consistently held that California does not recognize a cause of action for unjust enrichment, because "[u]njust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." *Swanson v. USProtect Corp.*, No. C 05-602, 2007 WL 1394485, at *5 (N.D. Cal. May 10, 2007) (quoting *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 347 (Cal. Ct. App. 2003)). Because "unjust enrichment is a theory that permits recovery on other recognized causes of action, including [] UCL and CLRA claims" which Plaintiff has pled here, dismissal of Plaintiff's unjust enrichment claim is warranted. *In re ConAgra Foods Inc.*, 908 F. Supp. 2d at 1114 (dismissing unjust enrichment claim with prejudice because plaintiff could seek restitution under consumer protection statutes).

## <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety.

Dated:  August 9, 2024

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ E. Alex Beroukhim*
E. Alex Beroukhim
*Attorneys for Defendants*
COSTCO WHOLESALE CORP and
NICE-PAK PRODUCTS, INC.

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:24-cv-03714